# CIRCUIT COURT OF THE CITY OF ROANOKE

Diamond Assembly Service
of Martinsville, Inc.

v.

Kenneth R. Guthrie
and Joseph P. Justus

December 28, 1999

Case No. CH99-41

BY JUDGE ROBERT P. DOHERTY, JR.

Diamond Assembly contracted with various retail stores, such as Wal-Mart and Home Depot, to assemble charcoal grills, bicycles, and other consumer goods that were sold by those stores. This assembly was done on the premises of the retail store by Diamond's mechanics, who were referred to as assemblers. These assemblers were paid based on the quantity of goods they assembled. Defendant assemblers entered into at will, non-competition employment contracts with Diamond, agreeing that when their employment with Diamond ended they would not directly compete with them for a period of six months. Defendants violated their agreements by going to work for one of Diamond's competitors and ultimately ended up assembling goods in some of the same stores in which they had worked for Diamond. A successful suit for injunctive relief was filed by Diamond preventing Defendants from competing against them for a period of six months. Diamond now asks for damages for the breach of the non-competition agreement, for attorney's fees, and, pursuant to Va. Code §§ 18.2-499 and 18.2-500, for damages to its reputation, trade, business, or profession. The Court finds for the Plaintiff on the breach of contract issues and for the Defendants on the allegations of statutory violations.

### Statutory Violations

In order to recover damages for a violation of § 18.2-499, the Plaintiff must show proof of a civil conspiracy by clear and convincing evidence, *Multi-Channel T.V. Cable Co. v. Charlottesville Quality Cable Operating Co.*, 108 F.3d 522 (4th Cir. 1997), that the conduct of the Defendants in breaching their agreement was aimed at damaging Plaintiffs business, *Peterson v. Cooley*, 142 F.3d 181 (4th Cir. 1998), and that Plaintiff's business was damaged as a result of the conspiracy. *Allen Realty Corp. v. Holbert*, 227 Va. 441 (1984). That proof was not forthcoming. Instead, the Court finds that the Defendants, individually and independently, left their employment with Diamond because they believed that their pay had been reduced when they switched from the gross income received as independent contractors to the after tax and after employee benefits net pay they received as employees of Diamond. No conspiracy existed. The individual Defendants were simply looking for new employment, their only motivation in hiring on with one of Diamond's competitors being their independent need for earned income. There was no intent on the part of the Defendants, jointly or severally, to injure Plaintiff's business. There being no conspiracy or intent to harm Plaintiff, no damages can be said to have accrued from a violation of § 18.2-499. Judgment is granted to the Defendants on the issues surrounding the allegations of statutory violations.

### Breach of Contract

The breach of the non-competition employment agreement is an entirely different matter. The Defendants individually and independently breached their separate agreements with Diamond when they went to work for one of its competitors and engaged in direct competition with Diamond. For those breaches Diamond is entitled to compensatory damages designed to give it the benefit of its bargain. However, its allegation of lost profits and the proof thereof fell short of its necessary burden. Diamond operates a relatively new business without a proven track record of profits, earnings, or business trends. It is a service oriented operation, the continuation of its at will contracts with retail stores being entirely dependent upon price and production. In fact, the evidence indicated that its agreements with retail stores were volatile in duration and, in some instances, seasonal, with clients hiring some of their own assemblers, some from Diamond, and some from Diamond's competitors, all at the same time. With that history, lost profits cannot be ascertained without speculation, a practice the Court declines.

538

The injunctive relief granted by the Court earlier in these proceedings did allow Diamond to freely carry out its business in the open market for a period of six months without the interference and competition of its former employees. That is what it bargained for and that is what it received. If, in fact, actual lost profits were incurred by unfair competition from the Defendants, those profits were recovered during the injunctive period, which served the purpose of restoring the *status quo* as it existed before the violation. See *Arvin, Inc. v. Sony Corp. of Am.*, 215 Va. 704 (1975). In addition to the damages recovered by virtue of the injunction, judgment is further granted against the Defendants, jointly and severely, for the attorney's fees incurred in prosecuting this matter in the amount of $7,813.50, the court costs for the filing fees and service of process fees, and the bond premium paid as a result of the injunction.